## Shady v. Wyoming Borough et al.

*Edward E. Hosey* and *John H. Hibbard*, for plaintiff.

*Roy B. Pope* and *Albert L. Anselmi*, for defendants.

PINOLA, J., December 10, 1951. — This case was tried without a jury, by agreement, under the Act of April 22, 1874, and its supplements.

Plaintiff, who was discharged on January 2, 1950, seeks to compel the Burgess and the Council of Wyoming Borough to restore him to the position of chief of police and to require them to create a civil service commission.

From the evidence, by agreement of counsel, we find the following

## Facts

1. Plaintiff, Joseph Shady, is a citizen of the Commonwealth of Pennsylvania and resides at 130 Susquehanna Avenue, in the Borough of Wyoming.

2. The Borough of Wyoming is a municipal corporation existing under the laws of the Commonwealth of Pennsylvania.

3. William Coslick, Peter Chronowski, John Hartman, Leo Chiavacci, Clair C. Murdoch and John Lowson are the duly elected members of the Council of the Borough of Wyoming, and Jack Dempsey is the duly elected Burgess of Wyoming Borough.

4. Under the Act of June 5, 1941, P. L. 84, and the amendments thereto, and the Act of July 10, 1947, P. L. 1621, sec. 36, provision was made for the creation of a civil service commission and for the method to be followed in the discharge of police officers in boroughs of the Commonwealth of Pennsylvania.

5. On December 18, 1941, the Borough of Wyoming established a civil service board in compliance with the Act of June 5, 1941, P. L. 84, and at a reorganization meeting of council in January 1942 the board was abolished.

6. The Borough of Wyoming and the borough council have failed to comply with the acts and refuse so to do, and at the present time the Borough of Wyom-

ing does not have a civil service commission as provided for in the acts.

7. Plaintiff has been a police officer in the Borough of Wyoming since 1931 and was promoted to the office of chief of police in January 1943, and served in that capacity until January 2, 1950, when he was discharged by the Council and the Burgess of the Borough of Wyoming.

8. Plaintiff was discharged by defendants without compliance with the provisions of the act above designated.

9. In addition to a chief of police, the Borough of Wyoming regularly employed, until January 2, 1950, an assistant chief of police and four other police officers designated as special police, who are assigned and ordered to work in rotation by the burgess, in his discretion or with his approval, and are paid the sum of 65 cents per hour for the hours that they actually work.

10. These special officers work no stated number of hours during any one month.

11. Plaintiff knows of no charges preferred against him by any one, and he has been given no opportunity to answer any charges if such exist. He has had no hearing and no opportunity to be heard before a civil service commission as provided for by law in any proceeding arising out of his dismissal from the service of the Police Department of the Borough of Wyoming.

12. Since his association with the Police Department of the Borough of Wyoming, plaintiff has faithfully performed his duties in accordance with the rules and regulations provided for and in compliance with the law.

13. On January 2, 1950, the vote by council on the motion to discharge plaintiff resulted in a 3-to-3 tie vote and the burgess, Jack Dempsey, voted in favor of

plaintiff's discharge, thereby breaking the tie and resulting in the discharge of plaintiff, Joseph Shady.

14. Each of the persons who have served as special officers since January 1, 1946, has been otherwise employed than in police duties as follows:

George Legas was employed as a salesman for the Federal Yeast Company between the hours of 7 a.m. and 5:30 p.m., five days each week.

Herman Jacobs was employed by the Glen Alden Coal Company at the South Wilkes-Barre colliery, between the hours of 7 a.m. and 2:30 p.m., on such days as the colliery was working.

Joseph Cortegerone was employed at the Hazard Wire Rope Division of the American Chain & Cable Company and worked five days per week between the hours of 7 a.m. and 3 p.m., and 3 p.m. and 11 p.m., or 11 p.m. and 7 a.m., depending upon the shift to which he was assigned.

William Carpenter was employed by Petrillo Excavating Company, and worked between the hours of 8 a.m. and 5 p.m., six days per week and at such other times as his services might be required.

Edward Murray was employed by the Pittston Coal Company at the Ewen colliery between the hours of 7 a.m. and 2:30 p.m., or 3 p.m. and 11 p.m., according to the shift to which he might be assigned and upon such days as the colliery was working.

LeRoy Miller was employed as a guard at the Second National Bank of Wilkes-Barre, Pa., between the hours of 8:30 a.m. and 5 p.m., five days per week, and 8:30 a.m. to 1 p.m. on Saturday in each week.

Ray Evans was employed as a meter reader by the Luzerne County Gas & Electric Corporation, between the hours of 8 a.m. and 5 p.m., five days per week.

Mason Eshleman was employed by Jermyn Green Coal Company between the hours of 7 a.m. and 2:30 p.m., upon such days as the colliery was working.

15. On April 6, 1927, by ordinance regularly adopted and approved, the Borough of Wyoming created a police force consisting of a chief of police, assistant chief of police and "as many Patrolmen and Special Officers that may be designated by the Burgess and Town Council." Salaries were fixed for the chief and the assistant. All other patrolmen and special officers were to receive 65 cents per hour while on duty.

16. On January 9, 1934, the borough council adopted an ordinance fixing the salaries of all borough officials, including those of the chief of police at $1,620 per annum, and night patrolman at $1,080 per annum. The compensation of special police officers was fixed at 50 cents per hour.

17. On April 10, 1940, the borough council adopted another ordinance creating all borough offices and fixing salaries. This included chief of police, salary $1,-800; assistant chief of police, salary $1,500, and special officers with compensation at 50 cents per hour.

Section 2 of this ordinance reads as follows:

"All ordinances and parts of ordinances inconsistent herewith are hereby repealed, and in addition thereto, the office of night patrolman is hereby expressly abolished."

18. At a regular meeting of the Council of the Borough of Wyoming, held December 18, 1941, the following resolution was duly adopted:

"Motion by Dooley, seconded by Hartman, that the Chief of Police, Thomas Parkinson, and special officers, Andrew Zavada and Robert Breese be dismissed, effective at twelve o'clock noon, Friday, December 19, 1941, and that they turn over all borough equipment to the chairman of the police committee."

19. At the same meeting, the following motion was duly adopted:

"Motion by Dooley, seconded by Hartman that Karl Eckert be appointed as Chief of Police at the annual

salary of $1800.00 effective at noon Friday, December 19, 1941."

20. At the same meeting, the following motion was duly adopted:

"Motion by Dooley, seconded by Hartman, that John Yurek be appointed patrolman at a monthly salary of $120.00 effective immediately."

21. On that date, namely, December 18, 1941, Joseph Shady, plaintiff, was a duly employed patrolman and member of the Police Department of the Borough of Wyoming.

22. At a regular meeting of the Council of the Borough of Wyoming, held December 18, 1941, the following motion was adopted:

"Motion by Hartman, seconded by Dooley, that the police civil service commission as provided by the Act of Assembly be set up."

23. At the same meeting, the following motion was duly adopted:

"Motion by Hartman, seconded by Dooley, that Thomas R. Lewis be appointed as a member of the police civil service commission for the term of six years."

24. At the same meeting, the following resolution was adopted:

"Motion by Hartman, seconded by Dooley, that Fred Weitz be appointed a member of the police civil service commission for a term of four years."

25. At the same meeting, the following resolution was duly adopted:

"Motion by Hartman, seconded by Brown, that John Dooley be appointed as a councilmanic member of the police civil service commission for a term of two years."

26. Following the appointment of the civil service commission, the members thereof took their oaths of office in compliance with the act and organized in ac-

cordance with its provisions, and on December 20, 1941, the police civil service commission, at a meeting thereof, adopted rules and regulations. The rules and regulations were approved by the borough council at a special meeting held on December 22, 1941.

27. At a regular meeting of the Council of the Borough of Wyoming held January 5, 1942, the following motion was adopted:

"Motion by Doty. I move that the borough council shall note of record that under the laws of the Commonwealth of Pennsylvania, and the duly recorded enactments of the borough, Thomas Parkinson, is and shall be recognized as Chief of Police of the Borough of Wyoming and the only person entitled to serve and be paid as such. Seconded by Zavacki."

Burgess Dempsey hesitated to put the motion to a vote saying that until such time as the legality of the action of the previous council should be judicially determined, he would recognize the action of previous council. Attorney Elleni stated that a motion was brought before the council and he (the chairman) must act on it. Roll call on above motion: Chiavacci, yes; Dooley, no; Doty, yes; Hartman, no; Hielman, yes; Zavacki, yes. Four yeas, two nays. Motion was carried.

28. At the regular meeting of January 5, 1942, the following motion was adopted:

"Motion by Doty. I move for the dismissal of the entire Police Civil Service Commission effective immediately. Seconded by Chiavacci."

29. At a regular meeting of Council of the Borough of Wyoming, held February 11, 1942, the following motion was adopted:

"Doty. I make this motion. In view of an ordinance duly passed by council and approved by the Burgess and which appropriately abolishes the office of night

patrolman, I move that John Yurek be informed by the secretary that his appointment to the police force of Wyoming Borough was not now or never has been recognized by the Council."

30. John Yurek received the sum of $48 as wages from the Borough of Wyoming for the period in which he worked as patrolman.

31. At the same meeting of February 11, 1942, the following motion was adopted:

"Motion by Zavacki, seconded by Doty, that all the offices of the Police Civil Service Commission be declared vacant and non-existent, civil service never being legally established in the Borough of Wyoming, and that the secretary inform the persons involved to that effect."

32. At a regular meeting of Council of the Borough of Wyoming, held December 10, 1942, the following motion was duly adopted:

"Due to the existing vacancy in the office of Chief of Police caused by the death of our late lamented friend, Thomas Parkinson, I move that Joseph Shady be appointed as Chief of Police at the rate of $150.00 per month, effective immediately. On question, Chiavacci. If it is satisfactory to council, make the pay retroactive as of October 15, 1942. Hartman stated, no. Six, yeas. Motion carried, and Joseph Shady declared by President the Chief of Police. Motion seconded by Dooley."

33. Just prior to the death of Thomas Parkinson, the police force of the Borough of Wyoming consisted of a chief of police, Thomas Parkinson, an assistant chief, Joseph Shady, and one or more special officers.

34. After the death of Thomas Parkinson and the appointment of Joseph Shady as his successor, the police department consisted of Chief of Police Shady and one or more special officers.

35. At a regular meeting of the council of the Borough of Wyoming, held January 13, 1943, the following motion was adopted:

"Motion by Zavacki, seconded by Hartman, that we adopt the ordinance abolishing the position as Assistant Chief of Police as presented at the last regular meeting. Moved by Chiavacci, seconded by Doty, that I feel the ordinance is out of order. I make an amendment that the motion be tabled. Roll call on above amendment. Chiavacci, yes; Dooley, no; Doty, yes; Hartman, no; Zavacki, no; Hielman, yes. Three yeas, three nays. Amendment was lost. Roll call and vote on above motion. Chiavacci, no; Dooley, yes; Doty, no; Hartman, yes; Zavacki, yes; Hielman, no. Three yeas, three nays. Borough Solicitor suggested to the Chairman that the Burgess has no vote. Hielman instructed the secretary, 'Mr. Secretary, don't record the Burgess's vote.' Statement by the Burgess: 'Gentlemen, for the reasons I have stated above I want the secretary to record my vote as "Aye" (Affirmative) in the ordinance abolishing the office of Assistant Chief of Police.' "

36. At a regular meeting of the Council of the Borough of Wyoming, held February 4, 1946, the minutes of the meeting read, in part, as follows:

"Assistant Chief of Police Ordinance read providing for additional police at $1800.00 per year. Motion by Hielman, seconded by Chiavacci, that we adopt the ordinance creating the position of Assistant Chief of Police. Roll call on above motion. Chiavacci, yes; Chronowski, yes; Dooley, no; Hielman, yes; Murdoch, no; Hartman, yes. Four yeas, two nays. Motion carried. Motion by Hielman, seconded by Chiavacci, that Charles Gruver be appointed as Assistant Chief of Police. Five yeas, one not voting, (Dooley). Motion carried."

37. At a reorganization meeting of the Council of the Borough of Wyoming, held January 2, 1950, the following motion was adopted:

"Motion by Lawson, seconded by Murdoch, to declare all borough offices vacant. Chiavacci, no; Chronowski, no; Hartman, no; Cosleck, yes; Lawson, yes; Murdoch, yes. Burgess voted, yes, on above motion."

38. At a reorganization meeting of the Council of the Borough of Wyoming, held January 13, 1950, the following motion was adopted:

"Motion by Lawson, seconded by Murdoch, we take up an ordinance in regard to setting of salaries of employees, abolishing certain offices and the creation of certain offices. Motion carried."

39. On January 2, 1950, the borough council adopted and the burgess approved an ordinance creating all borough offices and fixing the salaries. These included the office of chief of police, salary $2,460, and special police with compensation fixed at 65 cents per hour of actual service.

Under section 2, "because of economic reasons" the position of assistant chief of police was abolished and that of truck driver was merged with that of street commissioner.

Under section 4 all ordinances and resolutions or parts thereof inconsistent with the ordinance were repealed.

40. Between January 1946 and January 1950 the following persons were employed as special officers by the Borough of Wyoming: LeRoy Miller, Edward Murray, George Legas, Ray J. Evans, Mason Eshleman, William Carpenter, Jr., Joseph Cortegerone, Herman Jacobs.

41. The earnings of the special officers from January 1, 1946, to April 30, 1949, are as follows: For the year 1946, LeRoy Miller received total pay of $3.30; Murray, $208.60; Legas, $662.35; Eshleman,

$239.10, and Evans, $447.60, a total payroll for special officers of $1,557.65. For the year 1947, Officer Legas received $441.60; Evans, $471.69; Carpenter, $347.10, a total of $1,206.39. For the year 1948, Officer Carpenter received $369.58; Legas, $378.10; Evans, $295.15; Cortegerone, $305.15, a total of $1,347.98.

The compensation received by them during the year 1946 varied from $3.30 in one month to a high of $89.40 in another, the average being $48.79; in 1947, it varied from a low of $14.40 to a high of $107.40, the average being $36; in 1948 it varied from a low of $20.40 to a high of $55.25, the average being $31.44; and for the first four months of 1949, it varied with a low of $24.70 and a high of $71.50, the average being $34.63.

42. Joseph Cortegerone was a duly appointed special officer during the years 1946 and 1947, but received no assignments or pay during that time.

43. During the tenure of Mr. Shady as chief of police, he did work normally from 8 a.m. to 6 p.m.; the assistant chief did work every day from 10 p.m. to 7 a.m. the following day; one special officer did work from 6 to 10 p.m. each day, and one special officer did work on Sunday from 2 p.m. until midnight, the special officers being selected from the list by the burgess and were rotated so that they would each receive one week of work each month.

44. The special officers were subject to call on special occasions for which they received the regular pay of 60 or 65 cents per hour. These emergencies would include parades, extra heavy traffic, fire or any other unusual situation requiring police protection.

45. In pursuance of the alleged dismissal, Mr. Shady was without employment for a period of three months and his loss of salary for that period was at the rate of $205 per month, or a total of $717.50.

## Discussion

Plaintiff, at argument, agreed that all special officers were not engaged in police work during their normal working hours and that they did not receive a stated compensation for their services. Therefore, he abandoned the claim that there were, in January 1950, more than three employes in the police department which would require the existence of a civil service commission.

He contends, however, that he is entitled to be restored to his position because, having acquired a civil service status when the commission was created in December 1941 he could not be deprived of the rights incident to it by the abolition of the office of assistant chief or patrolman which resulted in a reduction in police officers below the number required for a civil service commission.

He contends also that the burgess had no right to vote on the motion to discharge him at a meeting of council held January 2, 1950.

Defendants, on the other hand, insist that the action of the outgoing council on December 18, 1941, was actuated by political motives and that it was promptly rescinded by the incoming council at sessions in January and February 1942.

They contend also that the council could not create the office of patrolman at the meeting in December 1941 by simply appointing one to that office and fixing his salary. That action being illegal, the borough had only two legally employed police officers. If they are correct, then the act creating the police commission did not become effective.

We dispose of plaintiff's second contention first.

The Borough Code was amended July 10, 1947, P. L. 1621, sec. 23, 53 PS §12893, by requiring the burgess to attend all regular meeting of council and giving to

him clear-cut powers in connection with voting. It provides:

"In all cases where, by reason of a tie or split vote, the council of any borough shall be unable to enact or pass any ordinance, resolution or motion, or to *declare* or fill any vacancy in its membership, or in any other borough office, it shall be the duty of the burgess . . . to cast the deciding vote."

From the plain language of the statute it is clear that, the vote of council being evenly divided on the motion to discharge the plaintiff, the burgess not only had the right, but it was his duty to vote.

So, unless plaintiff can succeed on his first ground, we will have to conclude that he was properly and legally discharged on January 2, 1950.

The ordinance of April 10, 1940, created the positions of chief of police, assistant chief, and special police officers, and repealed all prior ordinances. It provided further: "In addition thereto, the office of night patrolman is hereby expressly abolished."

On December 18, 1941, plaintiff was employed as a patrolman. By virtue of what authority he was acting, does not appear. However, with this we are not concerned because the question was not raised.

In order that plaintiff prevail in this case, he must prove that the appointment of John Yurek on December 18, 1941, was legal.

He was appointed patrolman, effective immediately, at a salary of $120 per month, although no such position had been created by the proper authorities.

Such action of council is clearly insufficient. It could not by simply appointing one to a position, create that position, nor could the fixing of the salary validate the appointment: 62 C. J. S. 1093, §569. The council, before it could appoint, should have created the office,

fixed the salary, and prescribed the duties and defined the powers: Commonwealth ex rel. Weimer v. Caldwell, 2 D. & C. 195.

The appointment being invalid, it was likewise without authority to set up a civil service commission because the act creating such commission specifically provides that it shall not apply to any municipality having a police force of less than three members: Act of June 5, 1941, P. L. 84, sec. 1. This number was retained by the Act of July 10, 1947, P. L. 1621, sec. 39; 53 PS §13300.1.

On reorganization the new borough council promptly, on January 5, 1942, and again on February 11, 1942, declared that the civil service commission was not in existence and vacated the offices of the commissioners. It is significant that Yurek, who was discharged, made no effort to sustain his position and no one was appointed in his place.

The pertinent Civil Service Act being inapplicable to him, plaintiff was subject to summary dismissal by the borough council in the exercise of the power that appointed him: Simasek et al. v. McAdoo Borough et al., 352 Pa. 306.

Because he was a member of the police force on the effective date of the Act of 1941, had the civil service commission properly come into legal existence, we would have been confronted with the troublesome question posed by his counsel, namely, whether the rights which he acquired were lost, merely suspended, or continued to exist, when, by reason of a reduction in the number of police officers below the required number, the civil service provisions of the law ceased to operate. However, the present situation does not require us to decide that question.

From the facts, we reach the following

## Conclusions of Law

1. There existing in the borough but one position of patrolman, which at the time was occupied by plaintiff, the appointment by the borough council of John Yurek as second patrolman on December 18, 1941, was illegal.

2. Since, on December 18, 1941, the Borough of Wyoming had but two legally employed members of its police force, the Act of June 5, 1941, P. L. 84, creating a civil service commission, did not become effective in that borough, and therefore, the act of the borough council creating a civil service commission was illegal.

3. At no time since January 5, 1942, has the Borough of Wyoming had a police force of more than two members who devote their normal working hours to police duty and who are paid a stated salary or compensation for such work by the borough.

4. Plaintiff did not at any time acquire a civil service status or any rights which would prevent his summary dismissal.

5. The borough council and the burgess properly and legally dismissed plaintiff.

6. Judgment should be entered in favor of defendants.

Accordingly, we enter the following

## Order

Now, December 10, 1951, the prothonotary will enter judgment in favor of defendants and against plaintiff, that the writ of mandamus do not issue, unless exceptions are filed to this decision by plaintiff within 30 days after notice by the prothonotary to the parties or their attorneys, as provided by the Act of 1874, P. L. 109, sec. 2.